**UNITED STATES**

v.

**Airman Leon J. VEILLEUX, FR 004–50–5791 36th Civil Engineering Squadron Headquarters Command, USAF.**

**ACM 21937.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 27 June 1975.

Decided 26 Feb. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Frederick P. Waite.

Before ROBERTS, ORSER and SANDERS, Appellate Military Judges.

## DECISION

ORSER, Judge.

Tried by military judge sitting alone as a general court-martial, the accused was convicted, despite his pleas, of three offenses of wrongful possession of heroin (Specifications 1 and 2, Charge, and Specification 5, Additional Charge I); one offense each of wrongful sale, transfer and use of heroin (Specifications 1, 3 and 6, Additional Charge I); and a single offense of wrongful possession of methamphetamine (Specification, Additional Charge II), in violation of Articles 134 and 92, 10 U.S.C. §§ 934, 892, Uniform Code of Military Justice. The approved sentence provides for a bad conduct discharge, confinement at hard labor for 30 months, forfeiture of all pay and allowances and reduction to airman basic.

Appellate defense counsel have assigned three errors for our consideration. The first alleges the military judge erred in two particulars in connection with an effort by the trial counsel to impeach a defense wit-

ness. The judge is alleged to have erred by improperly admitting:

(1) evidence of a prior inconsistent statement without a requisite foundation; and

(2) evidence of an act of misconduct not resulting in a conviction.

We agree only with the latter contention.

The Government's case with respect to four of the offenses consisted solely of the testimony of a Sergeant Fox. In connection with one, Specification 1 of Additional Charge I, Fox stated he purchased seven grams of heroin from the accused in January 1975, which transaction was witnessed by a Sergeant Andersen.

The defense subsequently called Sergeant Andersen who testified he had never seen the accused convey heroin to Fox or anyone else. On cross-examination, Andersen denied he had ever used, possessed or transferred heroin. He also denied being present in a barracks room with Fox and the accused on 8 April, on which occasion a heroin transaction (unrelated to any charge against the accused) allegedly occurred. Andersen, of course, categorically denied he had used heroin on that particular occasion.

In rebuttal, the Government recalled Sergeant Fox and, over defense objection, he was permitted to testify that Sergeant Andersen had told him he had used heroin. The prosecution's theory of admissibility was that since Andersen in his earlier testimony had denied any involvement with heroin, his alleged out-of-court admission to Fox amounted to a prior inconsistent statement.

Sergeant Fox further testified, again over defense objection, that on 8 April, while he was in a barracks room engaged in making a controlled drug buy under the auspices of the Air Force Office of Special Investigations (OSI), Sergeant Andersen entered and purchased a quantity of heroin from another of the occupants.

■ It is a matter of acceptable courtroom tactics for opposing party counsel to attempt to impeach, that is, diminish the credibility of any witness who appears in opposition to his cause. See Manual for Courts-Martial, 1969 (Rev.), paragraph 153*b* (1). One impeachment strategem commonly employed is to demonstrate that the witness at a time prior to his courtroom appearance made a statement, or conducted himself in a manner contradictory to all or part of his testimony. In legal parlance this impeachment device is termed a prior inconsistent statement. Manual for Courts-Martial, supra, paragraph 153*b* (2)(*c*).

The rules of procedure dictate that as a prerequisite to an attack on credibility on such basis, a proper foundation must be laid. This is normally accomplished by first directing the witness' attention to the time and place of the alleged statement, as well as the identity of the person to whom it was made, and then asking if he there and then made such a statement. *Ibid.*; *United States v. Howard*, 23 U.S.C.M.A. 187, 48 C.M.R. 939 (1974). If the witness denies authoring the statement, counsel is permitted to adduce independent evidence to the contrary.

■ Turning now to the case at hand, we agree the trial counsel did not lay his foundation with the preferred degree of specificity described in the Manual for Courts-Martial. But as we view the surrounding circumstances, greater particularity as to foundation factors, while certainly possible, was not, in the sound discretion of the military judge, mandatory. As seen, Sergeant Andersen testified that he had never had any involvement with heroin. In light of such a blanket disclaimer, it is patently obvious it would have been a futile exertion of energy for the trial counsel to further pursue the matter by asking the witness if he had ever told Fox a different story. See *United States v. Howard*, supra.

■ In addition, in our judgment there was a sufficient degree of contradiction between witness Andersen's denial of heroin involvement and Fox's claim that Andersen had admitted heroin usage to qualify as a prior inconsistent statement. When compared, the two statements in effect present a material variance which the trier of the facts was entitled to consider. See general-

ly McCormick, Law of Evidence (1954), Impeachment and Support, Section 34. We accordingly conclude the military judge did not abuse his discretion in admitting the statement in evidence.

 In connection with the second alleged impeachment error, the general rule is that a party opponent may not, except by cross-examination, impeach a witness by evidence he has committed an offense not resulting in conviction. Manual for Courts-Martial, supra, paragraph 153b(2)(b). The exception to the rule is that a witness' answer denying culpability in an alleged offense may be contradicted by other evidence "if the contradicting evidence would be admissible without regard to the answer." *Ibid.* Thus, following a witness' denial of criminality, contradictory evidence may not be offered merely for the general sake of impeachment. To be admissible, the act or acts of misconduct must be directly relevant to the merits of an issue in controversy. *United States v. Lyon*, 15 U.S.C.M.A. 307, 35 C.M.R. 279 (1965).

 Here, the impeaching evidence offered by the Government through witness Fox had no relevance whatever to the offense concerning which Andersen testified during his direct examination nor, for that matter, did it bear the slightest relationship to the merits of any of the other offenses with which the accused was charged. Therefore, though the trial counsel could properly ask Andersen accusatory questions about unrelated offenses not resulting in conviction, the witness' negative responses to such questions should have ended the matter. *United States v. Lyon*, supra; see *United States v. Robertson*, 14 U.S.C.M.A. 328, 34 C.M.R. 108 (1963); *United States v. Russell*, 3 U.S.C.M.A. 696, 14 C.M.R. 114 (1954); *United States v. Arevalo*, 11 U.S.C.M.A. 417, 29 C.M.R. 233 (1960). The trial counsel was bound by the negative answers, and the military judge accordingly erred in permitting in evidence Fox's contradictory testimony.

 Having so decided, we must further test the circumstances for prejudice. See *United States v. Vogel*, 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969). As earlier recited, witness Andersen's testimony on direct examination related to only one of several offenses to which the Government's primary witness Fox had testified. As to that offense, as well as others, the sole evidence of the accused's guilt was supplied by Fox. Fox's credibility had been vigorously challenged. Among other things, he admitted to extensive drug involvement both prior to and even during the time of his employment as an informant for the OSI. Respecting the heroin sale offense of present focus, Fox insisted Andersen was present during the transaction and Andersen was equally insistent he was not.

With the evidence in this posture, we are unable to conclude with total assurance that the military judge was not improperly influenced in resolving the ultimate issue of guilt against the accused by his consideration of the evidence of misconduct by Andersen. In an abundance of caution and to insure total fairness to the accused, we will resolve the issue by setting aside the conviction in question and reassessing the sentence on the basis of the remaining findings of guilty, none of which are affected by the error.

 In their second assertion of error, appellate defense counsel contend the accused was denied his right to a speedy post-trial review and action in terms of the rule enunciated by the United States Court of Military Appeals in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). In *Dunlap* the Court declared that

. . . a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial.

More recently, in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), the Court levied an additional requirement on the Government that a copy of the post-trial review be served on the defense counsel to provide him an opportu-

nity to correct or challenge any portion thereof he believes erroneous, inadequate or misleading. The Court noted this requirement would not serve to extend the *Dunlap* 90-day rule.

In support of this assignment, appellate defense counsel argue that the action of the convening authority which, along with the post-trial review, was dated 18 September 1975 (or 83 days following imposition of restraint after trial), was not the formal and final action contemplated by *United States v. Dunlap*, supra. That action, say counsel, did not occur until 10 October 1975, a total of 105 days after trial.

They point out the post-trial review was submitted to the defense counsel after the 18 September action of the convening authority, not before, as contemplated by *United States v. Goode*, supra. The review was received by counsel on 24 September 1975, 89 days after trial. Thereafter, by memorandum dated 10 October 1975, the staff judge advocate indicated he had discussed with the convening authority the issues raised by defense counsel in his response, and that functionary had "reaffirmed" his action. Relying on our recent decision in *United States v. Hurlburt*, 1 M.J. 742 (A.F.C.M.R.1975), rev'd on other grounds, (No. 31,435) (1976), appellate defense counsel contend that the memorandum of the staff judge advocate establishes the action was not promulgated within the context of *Dunlap* until the October date.

In *Hurlburt*, we observed that promulgation of the convening authority's formal, final action is effected by publishing the action in a court-martial order, by officially notifying the accused thereof, or by forwarding the record of trial to The Judge Advocate General for review by a Court of Military Review. *United States v. Shulthise*, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963). We decided that although the convening authority's initial action facially appeared timely, a supplemental review demonstrated the action was not *promulgated* within the meaning of the *Dunlap* rule until a later time. In the supplemental review, accomplished 102 days following trial, the reviewer, after reminding the convening authority he had earlier approved the findings and sentence, advised him it was necessary to consider the matters submitted by the defense counsel and determine whether he desired to modify his prior action in any respect. In our view, such advice presupposed that the initial action was not, in fact, promulgated, since a convening authority is not empowered to withdraw and modify his initial action after it has been published. Manual for Courts-Martial, supra, paragraph 89*b*.

In spite of the apparent similarity of circumstances between *Hurlburt* and this case, we are convinced a *Dunlap* 90-day rule violation did not occur. Here, the written response of the defense counsel, in acknowledging receipt of the post-trial review on 24 September 1975, further acknowledges "our understanding that the reviewing authority (in fact the convening authority in this trial by general court-martial) acted upon the record of trial without" first affording the defense five days in which to comment upon the review. As we see it, this response by the defense counsel is indicative that the accused had in effect been officially notified of the convening authority's action of 18 September 1975, an act which, as observed, constitutes an alternative means of effective promulgation. *United States v. Shulthise* and Manual for Courts-Martial, paragraph 89*b*, both supra. We presume a copy of the action was tendered to the defense counsel and the accused at the same time the review was forwarded for comment pursuant to the *Goode* requirement.

Based upon such notification to counsel and the accused, in our judgment the date of the convening authority's action, which bears the same date as the court-martial order (Manual for Courts-Martial, supra, paragraph 90*a*), was intended to be the date of promulgation of the formal and final action. Indeed such conclusion is buttressed by the circumstance that in this case the defense counsel and the accused were located in Germany, whereas the convening

authority was at Bolling Air Force Base, District of Columbia. Since the convening authority's action was taken on the eighty-third day of continuous restraint after trial, he must have been as aware as we that considering necessary mail time there was scant possibility defense counsel's response to the review would arrive in time to thereafter permit formal and final action within the 90-day limit of *Dunlap*.

Since the convening authority's formal and final action had thus been promulgated, the subsequent 10 October 1975 reaffirmation of that action reflected in the staff judge advocate's memorandum was of no legal significance. After the action was published and the accused officially notified thereof, the convening authority simply had no power to recall and in any way modify it. Manual for Courts-Martial, supra, paragraph 89*b*. We therefore conclude the circumstances demonstrate compliance with the *Dunlap* mandate, and conversely, a violation of the *Goode* requirement that a copy of the review be tendered to the defense counsel for comment prior to formal and final action by the convening authority.

Though a *Goode* violation might in other circumstances dictate a new review and action, we believe such remedy is unnecessary in this case. Concededly the accused was deprived of his opportunity to challenge the review before the convening authority acted on the record. However, in our view, such delict, as in cases involving a failure to provide an accused an opportunity to reply to adverse comment appearing in a review, must be tested for prejudice. See *United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958); *United States v. Scott*, 20 U.S.C.M.A. 264, 43 C.M.R. 104 (1971); *United States v. Roop*, 16 U.S.C.M.A. 612, 37 C.M.R. 232 (1967); *United States v. Rock*, 49 C.M.R. 235 (A.F.C.M.R.1974).

 Upon careful scrutiny, we are satisfied the review is adequate to properly inform the convening authority as to the case. *United States v. Foti*, 12 U.S.C.M.A. 303, 30 C.M.R. 303 (1961); *United States v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958). It contains a thorough discussion of the evidence, reasoning as to the witnesses' credibility, an application of the law to the facts, an opinion as to the adequacy and weight of the evidence and reasoned conclusions. See *United States v. Bennie*, 10 U.S.C.M.A. 159, 27 C.M.R. 233 (1959); *United States v. Cruse*, 21 U.S.C.M.A. 286, 45 C.M.R. 60 (1972); *United States v. Lindsey*, 23 U.S.C.M.A. 9, 48 C.M.R. 265 (1974). In short, the review is sufficient to permit the convening authority to exercise his responsibility as required by Article 64, Code, supra.

We are accordingly further convinced that the comments by the defense counsel challenging particulars of the review as erroneous, inadequate or misleading are without substance. Manifestly then, the accused suffered no prejudice as a result of the failure to provide him opportunity for timely comment and is entitled to no relief.

In their final assertion of error, appellate defense counsel contend the accused was denied due process and equal protection of the law by being prosecuted under Article 134, Code, supra, for drug offenses, rather than under Article 92. In support of this assignment, counsel cite to our attention that the Court of Military Appeals has *sua sponte* granted review in a number of cases involving this and related issues.

 In the case before us we find it unnecessary to await the Court's resolution of these issues, for whatever the ultimate disposition, we are here convinced that the accused could not have suffered prejudicial harm. Admittedly, there was a substantial difference in the maximum imposable punishment depending on which Article of the Code was employed. As charged under Article 134, the maximum confinement for the offenses of which the accused was convicted totaled 62 years. Conversely, had the charges instead been laid under Article 92, the maximum would only have been 14 years. In point of fact, however, the military judge sentenced the accused to 30 months confinement, far less than the maximum authorized under Article 134, and less than one-fifth that which could have been imposed under Article 92.

The offenses of which the accused stands convicted are serious and merit the punishment imposed. In these circumstances, we see no fair risk that the military judge was influenced in sentencing, or the convening authority in his approval action, by the theoretically greater maximum punishment exposure under Article 134 as opposed to Article 92. We are convinced that the manner of charging the offenses had no appreciable bearing on the sentence imposed and approved.

For the reasons stated, the finding of guilty of Specification 1 of Additional Charge I is incorrect in law and fact and is set aside. The remaining findings of guilty are correct in law and fact. Reassessing the sentence in light of this action, we find it to be nevertheless appropriate. The findings of guilty, as modified, and the sentence are hereby

AFFIRMED.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.