UNITED STATES, Appellee,

v.

Jose J. CRUZ, Sergeant, U. S. Air
Force, Appellant.

No. 34,480.
ACM 22108.

U. S. Court of Military Appeals.

Aug. 7, 1978.

Appearances: For appellant—*Captain
Thomas S. Markiewicz* (argued); *Colonel B.
Ellis Phillips* (on brief); and *Colonel Robert
W. Norris.*

For appellee—*Major Alvin E. Schlechter* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief); and *Captain William T. Snyder* (on brief).

### Opinion of the Court

FLETCHER, Chief Judge:

A general court-martial convicted[1] the appellant of six specifications of possession and sale of controlled substances charged under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. We granted review to examine three issues:

I. WHETHER THE COURT–MARTIAL LACKED JURISDICTION TO TRY APPELLANT FOR THE OFF–BASE SALES OF MARIHUANA ALLEGED IN SPECIFICATIONS 1 AND 5 OF THE CHARGE.

II. WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO REOPEN THE ARTICLE 32 INVESTIGATION AND TO REQUIRE THE PRESENCE OF THE GOVERNMENT WITNESS, A1C TEDDY L. MONHOLLEN, AT THE ARTICLE 32 INVESTIGATION.

III. WHETHER APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY THE FAILURE OF THE GOVERNMENT TO PROVIDE TRIAL DEFENSE COUNSEL WITH A COPY OF THE RECORD OF TRIAL FOR PURPOSES OF COMPLIANCE WITH THE MANDATE OF *UNITED STATES V. GOODE*, 23 U.S.C. M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

We will first address issues I and III; then issue II.

### A. Issue I

■ All of the transactions involving the appellant and undercover agent Monhollen occurred between February 21 and March 2, 1976. Of these, appellant challenges the jurisdictional basis of two. The first transfer of marihuana, in Lompoc, California, was initially arranged in a parking lot on Vandenburg Air Force Base. Although the drug was transferred at an off-base location, full payment was made in the appellant's on-base government quarters. These facts, viewed with a proper analysis of the criteria of *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1972), convince us that the jurisdictional prerequisite exists for court-martial prosecution. *United States v. McCarthy*, 2 M.J. 26 (C.M. A.1976).

■ However, regarding the jurisdictional contest on specification 5, the record contains insufficient factual information to employ the evaluative considerations of *Relford*. There is neither a clear showing of intent to commit the offense nor sufficient facts concerning the geography of negotiation. Jurisdiction must be affirmatively established by the Government. *See United States v. Alef*, 3 M.J. 414 n.6 (C.M. A.1977); *United States v. McCarthy, supra* at 28 n.2. As this burden has not been met regarding specification 5, that specification is not subject to court-martial jurisdiction and must be dismissed.

### B. Issue III

■ The trial defense counsel was permanently reassigned to Bitburg Air Base, Germany, after trial. Although he received a copy of the post-trial review for his comments under *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), he asserts that he was never provided a copy of the record of trial.[2] His rebuttal to the review was contained in a message dated August 13, 1976. The record contains a message dated August 26, 1976, which states that a copy of the *Cruz* record was received at the Bitburg Air Base legal office on August 16, 1976, and returned on August 26, 1976. The convening authority's

---

1. His sentence included a bad-conduct discharge, confinement at hard labor for three years and reduction to the lowest pay grade. The convening authority approved the discharge, confinement for eighteen months and the reduction. After two reviews and actions (the final one mandated by the United States Air Force Court of Military Review), that Court affirmed the findings and sentence.

2. Message to the staff judge advocate of 22d Air Force dated February 7, 1977.

action was taken on August 16, 1976. Thus, even if defense counsel had access to the record in 1976, it was of no use to him in preparing the rebuttal. There is nothing in the record to suggest that defense counsel had a copy of the record prior to preparing his rebuttal to the review dated January 25, 1977. It is asking too much to expect counsel to remember the contents of a record to which he last had access five months earlier. Accordingly, we must determine the effect of this deficiency.

Pursuant to *Goode*, we stated in *United States v. Cruz-Rijos*, 1 M.J. 429, 432 (C.M.A. 1976):

> In cases in which the accused has been transferred or confined at a location different from that of his trial defense counsel, we believe the Government may satisfy the spirit of Article 54(c), while also assuring effective representation of the accused, by serving the transcript on his counsel together with a copy of the staff judge advocate's review . . .

The *Goode* rule is eviscerated when the advocate of the accused has no opportunity to utilize the record of trial [3] to determine if there are errors in the post-trial review. We are compelled to agree with the suggestion of appellate defense counsel that the record of trial is an essential tool for the proper exercise of the defense counsel's post-trial duties. *See United States v. Larneard*, 3 M.J. 76 (C.M.A.1977); *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977); ABA Standards, The Defense Function § 8.2 (1971). Accordingly, lack of access to the record prior to rebutting the second review necessitates a new review and action.

## C. Issue II

The chief prosecution witness, whose testimony was *sine qua non* to the success of this prosecution, was specifically requested by the defense counsel on the day preceding the Article 32 investigation. This witness, Monhollen, a service person, had been taken to another military installation and his commander denied a request for his attendance, determining him unavailable ostensibly because of exigent job responsibilities, the "possibility" that unascribed threats against him would be carried out, and the five flying hours that lay between him and the situs of the Article 32 investigation. It was this third factor which the commander considered determinative in his denial of Monhollen's appearance. Following this denial, toward the end of the investigation, the defense counsel requested a continuance to secure Monhollen's attendance. The investigating officer denied this request and, in lieu of Monhollen's presence, considered his sworn written statement.

█ We have in various cases addressed the meaning of the Article 32(b) provision for cross-examination of witnesses "if they are available." The Code and Manual have not provided compulsory process for appearance at an Article 32 hearing; however, it has been made clear that a service person under military control may be ordered to appear under military orders.[4] *United States v. Ledbetter*, 2 M.J. 37 (C.M.A.1976). Absent proper objection to a *substantial pretrial right*; the merger of that right into those at trial; and with no indication that the proceedings have in some way adversely affected appellant's trial right, this Court is on record that appellant's conviction should not be set aside. *United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958).

We have addressed related aspects of this issue. In *United States v. Donaldson*, 23 U.S.C.M.A. 293, 49 C.M.R. 542 (1975), the Article 32 investigation was improperly

---

**3.** It should be noted that Military Justice Guide, AFM 111–1, paragraph 6–10 (C.2, effective July 2, 1976), provides: "A copy of the record of trial should be given or sent to counsel . . . In no case should this be later than the forwarding of the review for the *Goode* examination, but earlier transmittal is desirable."

**4.** Availability of the service person is not measured in terms of distance from the trial. *United States v. Davis*, 19 U.S.C.M.A. 217, 41 C.M.R. 217 (1970); *compare* Article 49(d)1, Uniform Code of Military Justice, with *United States v. Gaines*, 20 U.S.C.M.A. 557, 43 C.M.R. 397 (1971).

convened. That timely objection was made to this defect required reversal. So, too, the denial of the key military witness at the Article 32 when requested by the defense in *United States v. Ledbetter, supra* at 43–4, resulted in reversal. Also, a German prosecutrix was erroneously assumed by the military judge to be unavailable in *United States v. Chestnut,* 2 M.J. 84 (C.M.A.1976). Since she had not refused to testify at the Article 32 investigation, the military judge arbitrarily denied the proper motion to depose the witness. Finally, in *United States v. Chuculate,* 5 M.J. 143 (C.M.A.1978), we likewise perceived, in an indecent assault prosecution, a deprivation of a substantial pretrial right to cross-examination but the defense did not assert the depositional right[5] and there was no adverse effect at trial. Because of the unique identification of the assailant in *Chuculate,* we were unable to find good reason for reversal.

In the case *sub judice,* the defense could have moved for deposition of the absent military witness and, in fact, did unsuccessfully move for the production of the witness. In our view this present case is governed by the rule in *Ledbetter*: "The significance of the witness' testimony must be weighed against the relative difficulty and the expense of obtaining the witness' presence at the investigation." *United States v. Ledbetter, supra* at 44.

However, while the significance in the availability equation of the untimely transfer of the key prosecution witness in *Ledbetter* is paralleled in the curious transfer of Monhollen three weeks before this Article 32 investigation, unlike *Ledbetter,* there was no renewal at trial of the production motion. Without such motion, the merger with the cross-examination rights at trial and the absence of any perceptible adverse effect on appellant's rights removes any basis for reversal.

The decision of the United States Air Force Court of Military Review is reversed. The finding as to specification 5 of the

charge is set aside and that specification is dismissed. The action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for a new review and action by a convening authority on the remaining findings and the sentence.

Judge PERRY concurs.

COOK, Judge (concurring in part/dissenting in part):

I agree with the principal opinion's determination, in Part A that the offense alleged in Specification 1 was service connected, and, therefore, triable by court-martial; however, I disagree with the conclusion that the requisite connection does not exist as to Specification 5. Examining the relationship between Monhollen and the accused, the Court of Military Review found that their "course of conduct" established a direct and continuous connection between the events that resulted in Specification 1 and those that led to Specification 5. I agree with that view, and with the court's determination that the connection justified the exercise of court-martial jurisdiction over Specification 5, as well as Specification 1. *See also* my separate opinion in *United States v. Roberts,* 4 M.J. 91 (C.M.A.1977).

As to Part C of the principal opinion, I do not share the suspicion implied in the characterization of Monhollen's removal from the area of the incidents as a "curious transfer." Monhollen was transferred because the authorities had received information as to threats against him, which they "definitely" believed. I see nothing in the record that hints at any purpose to defeat or impair a defense effort, before trial, to subject Monhollen to examination under oath. I agree that the accused is entitled to no relief under this assignment of alleged error.

Turning to Part B, it is incomprehensible to me how the government's compliance

---

5. This defense request, if granted, would have preserved the right of cross-examination, particularly in this case, of reluctant civilians be-

yond the reach of codal subpoena, an instance not commonly addressed in our case law corpus.

with the command of Article 54,[1] that an authenticated copy of the "record of [trial] be given to the accused" can be turned into error prejudicial to the accused.

*United States v. Cruz-Rijos*, 1 M.J. 429 (C.M.A.1976), provides no support for the majority's decision. On the contrary, in order to meet the time limitations imposed by *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975), this Court enlarged on Article 54 to authorize service of the transcript of trial on the defense counsel, as an alternative to service on the accused, whenever the accused was not within the court-martial command reviewing the record of his conviction. The authorization was not postulated as a command that service upon counsel absolutely replace service upon the accused. I certainly did not understand the opinion to mandate such substitution; it could not do so without violating Article 54.

The accused does not contend he was not served an authenticated copy of the record of trial. The Court-martial Data Sheet (DD Form 494, 1 June 1970), which accompanies the record of the court-martial proceedings, shows the "Yes" column checked by both trial counsel and the staff judge advocate in regard to the question, "Was each accused furnished a copy of the record (para. 82*g*(1) & 83, A9–2 [MCM 1969)]." Thus, the record demonstrates the accused

was served with the transcript of trial. I believe it was then the duty of defense counsel to obtain that record from the accused. For myself, therefore, I reject the notion that defense counsel's failure to act can be alchemized into government misconduct.[2]

In any event, I perceive no risk of prejudice to the accused in what happened. At best, defense counsel's lack of possession of the record relates to the question of the effect of his failure to object to the adequacy of the staff judge advocate's post-trial advice. *United States v. Goode, supra.* The record has been available to appellate defense counsel through two appeals to the Court of Military Review. Yet, there has never been any assertion that matter in the record should have been, but was not, brought to the attention of the reviewing authority by the staff judge advocate. There was, however, full ventilation of the factors relating to sentence. The actions by this Court and the Court of Military Review have now removed any possibility of prejudice from an inadequate review. I, therefore, see no useful purpose in providing another opportunity to trial defense counsel to comment on the staff judge advocate's review.

I would affirm the decision of the United States Air Force Court of Military Review.

1. Uniform Code of Military Justice, 10 U.S.C. § 854.

2. A message, dated February 7, 1977, from defense counsel to the staff judge advocate of the 22nd Air Force, the reviewing authority whose action is in issue on this appeal, contains a representation that counsel had "not been provided a copy of the record of trial." However, a writing titled "Memorandum for Record of Trial—*UNITED STATES V. CRUZ, JOSE J.*," signed by the general officer who was the staff judge advocate of the Strategic Air Command at the time that command had the accused's

case for review, indicates that a copy of the record of trial was forwarded to defense counsel on August 6, 1976, and that "we have been advised that the copy of the record was received 16 August 1976." The difference between the two documents and the admission of defense counsel, in the message sent to the 22nd Air Force, and his "memory [of the case] had faded" raises the distinct possibility that defense counsel had simply forgotten that he had received the record of trial at some time, although that may have been after the convening authority had completed his review.