BARR, Judge:
Appellant was convicted by general court-martial, pursuant to his pleas of guilty, of possession and distribution of .91 grams of cocaine. The sentence, adjudged on 27 May 1983, extended to a bad conduct discharge, confinement at hard labor for one year, total forfeiture of all pay and allowances and reduction to pay grade E-l. During the trial, appellant was represented by a military detailed defense counsel, after specifically reciting his declination of the assistance of either civilian or* individual military counsel. The record of trial was authenticated on 7 June 1983 and subsequently forwarded to the convening authority for review and action under Articles 60, 61 and 64, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 860, 861, 864.
In a letter to the convening authority dated 17 June 1983, trial defense counsel advised that appellant had retained a civilian attorney to assist in the review of his court-martial conviction. Counsel identified the civilian attorney by name and address, stated that said attorney was on duty with the National Guard until 27 June, and requested, at the specific behest of the said attorney, that the convening authority delay taking action “until Mr. Hohlbein re *404 turns to his law practice and familiarizes himself with FR Luedtke’s case.”
The review of the staff judge advocate was signed and forwarded to the trial defense counsel on 22 June, in compliance with the judicially created requirement set forth in United States v. Goode, 1 M.J. 3 (C.M.A.1975). A form to signify receipt of that review is dated 27 June and signed by the trial defense counsel.
A staff memo dated 1 July, and included in the record of trial, recounts a telephone conversation in which the trial defense counsel again advised the staff judge advocate’s office of the civilian attorney’s involvement in the case and requested, in the name and on behalf of that attorney, an extension of time in which to respond to the review. An extension until 11 July was granted orally on 1 July, with the condition that a written request be filed with the convening authority. A letter to that effect, reciting the contents of the matter relayed by the trial defense counsel in the aforementioned conversation of 1 July, including the request for extension, was signed by trial defense counsel on that date. On 7 July, the convening authority transmitted a letter to the trial defense counsel confirming the oral grant of extension and reciting therein that any response was to be delivered to the staff judge advocate no later than close of business on 11 July. A copy of this letter was sent to the civilian attorney. This letter also acknowledged the convening authority’s awareness that appellant had retained a civilian attorney and that trial defense counsel’s letters of 17 June and 1 July had been received.
The record of trial contains no evidence that any action was taken by either the trial defense counsel or civilian attorney to comply with the 11 July deadline or to request a further extension beyond that date. On 18 July 1983, seven days after the extension period had passed, the staff judge advocate’s office initiated a telephone conversation with trial defense counsel and ascertained that that counsel had no comments on the review and that he would return the Goode form. The staff judge advocate personally signed a notation indicating that no response had yet been received from the civilian attorney. The convening authority’s action was taken on 18 July. Unknown at the time the action was signed by the convening authority was the existence of a letter from the trial defense counsel to the convening authority, dated 18 July, which indicated, for the first time, that the civilian attorney was to prepare the Goode response and that the trial defense counsel was mailing a copy of the review to the civilian attorney.
On 12 and/or 16 August,[1] over a month after the expiration of the extension period, Mr. Hohlbein forwarded a petition for clemency in behalf of appellant to the convening authority, reciting as authority for such submission Paragraph 77a, Manual for Courts-Martial, 1969 (Rev.) (MCM).[2] The petition urged reduction in the confinement and forfeitures adjudged by the court on the grounds that (1) this was a “one-time, isolated incident;” (2) appellant regretted his conduct and desired to remain in the service; (3) a reduction in the sentence would more comport with sentences awarded at special courts-martial to individuals with similar records and for similar offenses; (4) a special court-martial had been recommended by the staff judge advocate in the Article 34, UCMJ, 10 U.S.C. § 934, advice, and; (5) appellant had never been granted drug counselling “when in good conscience and by regulation he should have been provided.” Mr. Hohlbein also *405 requested that the petition “be treated as preliminary and that an additional four weeks be allowed to accommodate submittal of additional materials which will have a significant bearing on this matter.”
The staff judge advocate responded to Mr. Hohlbein by letter on 22 August, advising that the convening authority, in the absence of receipt of a Goode response or any request for a further enlargement of time, and after waiting an additional week beyond the 11 July deadline in case a response had been delayed in the mail, took his action on 18 July. The staff judge advocate also related that the clemency petition had been transmitted to appellant’s appellate defense counsel[3] and recommended that Mr. Hohlbein contact the appellate counsel directly. The record contains neither evidence nor averment that any such contact was initiated by the civilian attorney.
Nothing was heard from Mr. Hohlbein until 8 December 1983, when this Court received, directly from that counsel, an undated document styled as a “Motion to Remand.”[4] This “Motion,” in addition to reciting factors (1), (3), and (5) contained within the clemency petition of 16 August, as above-enumerated, claimed that, though the convening authority had been “served with our notice of appearance in the matter,” “Defendant’s counsel” was not served with notice of the impending convening authority action, citing United States v. Robinson, 11 M.J. 218 (C.M.A.1981), for this proposition; that the convening authority action “took place before we could have received such notice;” that “Defendant’s counsel” was not afforded an opportunity to submit a clemency petition on behalf of appellant; and, that “the Convening Authority action did not comply with the ‘Goode’ decision 1MJ3 CMA 1975 in that staff judge advocate is required to serve copies on all counsel.” The relief requested was to set aside the action of the convening authority and remand the case to that official “for a proceeding.” The “Motion” is signed by Mr. Hohlbein as “Major, US Army.”[5]
This Court denied the motion to remand on 5 January 1984. After receiving clarification that the issues stated within the motion were not also to be considered as pleadings submitted pursuant to Rule 16, Courts of Military Review Rules of Practice and Procedure, we granted civilian attorney until 2 March 1984 to specify errors and file a brief for review.
Three errors have now been assigned for our consideration:
I
THE COMMANDER, NAVAL BASE SEATTLE FAILED TO GIVE ANY NOTICE TO APPELLATE COUNSEL REGARDING THE IMPENDING CONVENING AUTHORITY ACTION ON THE TRIAL.
II
THE COMMANDER, NAVAL BASE, SEATTLE, FAILED TO GIVE CONSIDERATION TO THE CLEMENCY PETI *406 TION SUBMITTED BY APPELLATE COUNSELOR ON AUGUST 16, 1983.
Ill
THIS HONORABLE, THE JUDGES OF THE U.S. NAVY COURT OF MILITARY REVIEW ON 5 JANUARY 1984, ERRED IN THAT THEY FAILED TO GRANT THE MOTION TO REMAND SUBMITTED BY APPELLATE COUNSEL.
For reasons to be stated herein, we find each asserted error to be void of merit.
While the distinct facts of this case — the hiring of a civilian attorney, who did not participate in the trial of a case, to represent a military appellant during the statutory review stages — suggest the unlikelihood of their repetition, there exists an underlying problem which has generated, and continues to generate, much confusion — a misunderstanding of the various avenues available to an appellant’s counsel to pursue trial and post-trial issues and other interests of a military appellant during the review process. We have no hesitation in concluding that the civilian counsel’s lack of understanding of the vagaries of this process, and his failure to both appreciate and to act timely within the constraints established thereby, are the primary reasons for the discombobulated manner in which that process has proceeded in this case.
CODAL AND MANUAL PROVISIONS
Article 38(c), UCMJ, 10 U.S.C. § 838(c), is the sole codal provision which delineates post-trial duties of a defense counsel in the appellate representation of a convicted military accused and which applies to every case.[6]
In every court-martial proceeding, the defense counsel may in the event of conviction, forward for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he considers appropriate. (Emphasis supplied.)
The Commentary which accompanied this Article during the legislative process clearly establishes that the duty described is discretionary with the defense counsel.[7] Further, that history reveals, in unequivocal language, that the “brief” envisioned by the drafters was to be a mechanism whereby the defense counsel could address legal issues to the attention of the reviewing authorities:
Mr. Larkin ... In (c) we provide the manner in which a defense counsel may write a brief, if he desires, and have it included in the record so that any legal points he cares to raise will be available for consideration upon review.[8] (Emphasis supplied.)
In appellate practice, which is what Article 38(c) deals with, the term “brief” is a word of art, importing more than merely stating the general nature of an issue. It contemplates
(a) written or printed document, prepared by counsel to serve as the basis for an argument upon a cause in an appellate court, and usually filed for information of the court. It embodies the points of law which the counsel desires to establish, together with the arguments and authorities upon which he rests his contention.[9] (Emphasis supplied.)
The Rules of this Court also require, as an expectation to be derived from a brief, the incisive and exhaustive development of an issue described within the above definition. All too often this expectation is left unrealized, as exemplified by the penchant of many trial defense counsel to specify issues within the counsel’s statement which *407 accompanies the Appellate Rights Statement by such generalizations, without more, as “denial of speedy trial,” “failure to grant challenge,” and “denial of suppression motion.” Where so included, the clear intendment of the clause within that Statement for a defense counsel to specify issues to be raised on review is to afford a convenient vehicle for filing, within the record, an Article 38(c), UCMJ, brief.
In addition to providing a format, as well as a recognized procedure, for specifying legal issues for consideration on review, an Article 38(c) brief can be legitimately utilized by defense counsel to “object to the contents of the record” of trial. Though Paragraph 82e, MCM, provides for such a right, and specifies the method of effectuating it, it is not absolute. Thus, where defense counsel is unable to examine the record before it is forwarded to the convening authority, Article 38(c) is the authority for that counsel to identify, as a matter of record, those errors or omissions in the record which, in his view, require correction in order to “make the record show the true proceedings.”
The Manual provides the regulatory framework for implementing Article 38(c). We above referred to Paragraph 82e and its nexus with that Article. The corollary provisions for the filing of a brief of legal issues are set forth in Paragraphs 48/c (2) and 77c, MCM, 1969 (Rev.). The former cited subparagraph is a verbatim transposition of Article 38(c), UCMJ, into the Manual. Paragraph 77c refers directly to Paragraph 48/c (2), as well as reinforces the view that the “brief” is to be utilized to specify legal issues desired to be considered on review.
The Manual goes beyond the Code, by specifically providing a mechanism for defense counsel to initiate a recommendation for clemency in behalf of the accused. Read together, these provisions, Paragraphs 48fc(l) and 77a, MCM, authorize the defense counsel to submit such a recommendation to the court members, military judge or convening authority for their consideration and, as to the latter, action. The only limitation to this right to request and recommend clemency is that the matters identified as purportedly warranting clemency “should not be cumulative of matters presented to the court before the sentence was announced.”
This survey of the Code and Manual reveals that defense counsel can interject himself, on behalf of his accused, into the appellate process by: (1) filing a brief of legal issues to be raised (Article 38(c), Paragraphs 48A; (2) and 77c); (2) initiating recommendations for clemency (Paragraphs 48/c (1) and 77a); and, (3) challenging the accuracy of, and requesting “appropriate changes to,” the record of proceedings (Article 38(c); Paragraph 82e ).[10] This was considered sufficient, until case law clothed the staff judge advocate review with such a status and legal importance that inaccuracies or omissions in that review came to constitute an independent ground for finding reversible error — and thus, a predicate, independent of statutory authority, for expanding the role of defense counsel in the appellate post-trial process.
PROVISIONS CREATED BY DECISIONAL LAW
In Goode, the Court of Military Appeals, after categorizing the history of claims of error based on the “misleading nature” of, and/or omissions in, the staff judge advocate review as “continual and often repeated,” created, as a matter of “judicial convenience,” a post-trial procedure directed toward resolving these errors at the stage in the review process where correction would be most effective, both in terms of providing the decision maker with accurate and complete advice and affording an accused immediate relief, if warranted. United States v. Dowell, 15 M.J. 351 (C.M. A.1983). It might be thought that, with *408 over nine years of military post-trial practice having been governed by Goode, little, or no, debate would now surround, or require exploration of, its meaning and application. As the instant case makes self-evident, however, such is not the case. We set forth that portion of the decision which created, and, thus, defines the parameters of, the procedure:
Accordingly, it is ordered that ... a copy of the written review required by Article 61 or 65(b), UCMJ, ... be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings. The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review.
United States v. Goode, supra, at 6.
No powers of interpretation or acute and perceptive discernment would seem to be necessary to understand the intendment of this order. It is the staff judge advocate’s review which is subject to “correction, challenge or comment” [11] — not the accuracy of the record of trial, not the decisions of the military judge on motions, objections, challenges, or other trial rulings.[12] Nor is the Goode response to be used as an alternative to preparing and forwarding a recommendation for clemency.[13] If this be the case, as we believe it to be, then, if the substance of an asserted error can be reduced to nothing more than a claim that a counsel was denied the opportunity to submit a clemency petition on behalf of his accused because the mandate of Goode was not complied with, it is an assertion based on an incorrect and improper premise.
A second aspect of Goode requiring exploration concerns the mechanics of the 5-day rule. What is contemplated is that day one commences on the date that service of the review upon the defense counsel is perfected. Five calendar days thereafter the response must be in the hands of the convening authority. If not, the convening/supervisory authority can then immediately take his action on the case in full compliance with the timing rule of Goode.[14] Should time beyond that provided for in the rule be required in order to fashion a response, it is incumbent upon the defense team to request an extension beyond the 5-day period for this purpose. While there has been some intimation that a failure of a convening authority to grant such an extension request might be viewed as an abuse of discretion, the law remains unsettled on this point. See United States v. Hand, 11 M.J. 321 (C.M.A.1981). Of course, if an extension is granted, that grant binds not only the defense team, but also the convening authority, as it serves as a self-imposed limitation upon his taking action on the case. See United States v. McAdoo, 14 M.J. 60 (C.M.A.1982).
Procedural amplifications upon, and extensions to, the Goode rule continue to be announced.[15] Ancillary to the facts of the *409 instant case are those cases dealing with the claimed right of counsel for the accused to his own copy of the record of trial to be supplied by the convening authority for purposes of preparing the Goode response. There, of course, exists no such statutory right. The claim of right, however, has arisen as a result of the requirement in Article 54(c), UCMJ, 10 U.S.C. § 854(c), that an authenticated copy of the record of trial be served upon an accused prior to the action of the convening authority, and the interpretation of that Article in United States v. Cruz-Rijos, 1 M.J. 429 (C.M.A. 1976) and United States v. Cruz, 5 M.J. 286 (C.M.A.1978). What is often lost sight of is that neither case created an absolute right in the defense counsel to his own copy of the record which would be in addition to the copy required to be served pursuant to Article 54(c). Under Cruz-Rijos, it is only where the transfer or confinement of the accused at a location different from that of his defense counsel, and compliance with Article 54(c) by service of the record on the accused cannot be effectuated, that substitute service of the record on defense counsel can be viewed as satisfying “the spirit” of Article 54(c). The thrust of Cruz-Rijos is to effectuate compliance with the codal mandate. While citing Cruz-Rijos as the predicate for its decision, Cruz seemed to alter the thrust away from compliance with Article 54(c) and to create, as an incident of that Article, a right in the defense counsel to his own copy of the record notwithstanding proof of service upon the accused. This reading of Cruz, we believe, is much too broad. The key to that case is access to, and the opportunity to utilize, the record of trial by the defense counsel, obtained at his initiative, in order to meet his responsibilities under Goode. This interpretative nexus which we find to exist between Article 54(c), Cruz-Rijos, and Cruz is clearly — and dispositively — set forth in United States v. Babcock, 14 M.J. 34 (C.M.A.1982):
Significantly, we have heard no claim that the copy of the record of trial — for which appellant signed a receipt on January 18 — was not fully available to (trial defense counsel) from that time forward. Moreover, ... the staff judge advocate at Pearl Harbor, was not placed on notice that this copy furnished to Babcock pursuant to Article 54(c) would not be available to ... the individual military counsel. Until he had reason to believe that (the individual military counsel) lacked access to the record, (the staff judge advocate) had no obligation to mail a copy to him in the Phillippines. The principle enunciated in Cruz and Cruz-Rijos that a record of trial should be available to the defense counsel for his post-trial duties does not include any requirement that, without request, the staff judge advocate provide a copy to the accused and all defense counsel. Instead, the defense counsel bear some responsibility for coordination with their client and between themselves. Therefore, under the circumstances of this case any requirements of Goode and Cruz that the record be available to defense counsel were satisfied.
United States v. Babcock, at 36.
One final matter might be mentioned in the context of defining the post-trial duties of a counsel as expressed in decisional law. United States v. Palenius, 2 M.J. 86 (C.M. A.1977), established the requirement that trial defense counsel, as an incident of his ethical responsibilities of representation, remain on the case as attorney of record— and maintain active the attorney-client relationship — until formally relieved as a consequence of the intervening designation and performance of duties by substitute or appellate counsel. Palenius also confirms our opinion that the post-trial rights and duties of a trial defense counsel to respond to the staff judge advocate review, to submit recommendations for clemency, to recommend corrections to the record, and to file a brief raising legal issues are separate rights and duties, for each of which separate provision — by statutory or decisional law — has been made.[16] We, therefore, be *410 lieve it to be altogether proper to look beyond the form or format utilized to address a concern to the attention of reviewing authorities, to determine the substance of that concern, and to apply the procedural rules that have been created to effectuate the substance of the concern and not its form.[17]
POST-TRIAL AUTHORITY OF A CONVENING/SUPERVISORY AUTHORITY
In the context of the instant case, we refer now to the power of the convening or supervisory authority to take, or direct, action on a case after having acted pursuant to Articles 60, 64 and 65, UCMJ, 10 U.S.C. §§ 860, 864, 865, as appropriate— where a rehearing (Article 63, 10 U.S.C. § 863), proceeding in revision (Article 62(b), 10 U.S.C. § 862(b)), return of the record for correction (Paragraph 86c), other trial (Paragraph 926), or DuBay hearing[18] is not ordered.
The statutory law on this point is found in Paragraph 896, MCM:
The convening authority may recall and modify any action taken by him at any time before it has been published or the accused has been officially notified thereof. When, as an incident of the review of a record of trial pursuant to Articles 65(b), 66, or 67, or examination of a record of trial pursuant to Article 69, any incomplete, ambiguous, void, or inaccurate action of the convening authority is noted, this action will be modified by him in accordance with the advice or instructions of a higher reviewing authority or the Judge Advocate General.
Under the law, the convening authority could take no official action in this case once he published his action or the accused had received official notice thereof — unless directed to do so by this Court. In United States v. Shulthise, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963), the Court of Military Appeals held that publishing of an action occurs when it is promulgated by a court-martial order or when the case is transmitted for review to the next higher authority. Once either of these steps or notification of the accused of the action takes place, subsequent action by the promulgating, transmitting, or notifying authority on the case is prohibited. The divestment of his authority is completed. See United States v. Baughcum, 4 M.J. 536 (N.C.M.R.1977).
APPLYING THE LAW TO THE FACTS
The first issue we must address is the relationship between the civilian counsel, Mr. Hohlbein, obtained by appellant after the trial, and the military counsel who represented appellant at trial. We conclude, under the facts presented, that the trial defense counsel was never released by appellant from any post-trial responsibilities. We further find overwhelming evidence within the post-trial actions of the civilian attorney that he considered the trial defense counsel his agent for purposes of initiating and maintaining communication with the convening authority and the staff judge advocate. Trial defense counsel, at the specific behest of Mr. Hohlbein, three times requested an extension of time in order to file a Goode response. Furthermore, the civilian counsel utilized the services of trial defense counsel to serve his “Notice of Appearance” in the case to the convening authority. Finally, until the 16 August petition for clemency, there was absolutely no direct communication in any *411 form between Mr. Hohlbein and the convening authority, or the latter’s agent, the staff judge advocate. All communications were initiated by the trial defense counsel. These facts lead ineluctably to the conclusion that Mr. Hohlbein adopted the actions of the trial defense counsel as his own and purposely conveyed to the staff judge advocate and the convening authority that all communications to him concerning post-trial matters should be accomplished directly through the offices of the trial defense counsel. Under these circumstances, the staff judge advocate and the convening authority cannot be faulted with assuming to be fact — that trial defense counsel spoke with the consent of, and for, the civilian counsel — that which Mr. Hohlbein clearly lead them to believe, by his actions, to be fact. In this regard, Robinson, cited by Mr. Hohlbein in support of his contention that error occurred when the convening authority did not give him advance notice that the action would be taken, is more than just factually inapposite to any contention raised by that counsel, including the issue of direct service of the staff judge advocate review. Robinson is clear authority for finding that the actions of the trial defense counsel in this case were taken with the consent of Mr. Hohlbein and that their actions and inactions in performing post-trial responsibilities must be treated as those of an entity — the defense team — and not of individual counsel.
We turn now to the various contentions raised by the civilian attorney in his “Motion to Remand” and appellate brief.
The evidence is clear the appellant had a copy of the record of trial. Mr. Hohlbein was not entitled to his own copy, supplied at the time and expense of the convening authority. It was his duty to obtain a copy from appellant, or, if unable to so obtain, to specifically request a copy from the convening authority. United States v. Babcock, supra. Mr. Hohlbein had access to a copy — that is all the law requires. United States v. Cruz, supra.
The service of the staff judge advocate review upon trial defense counsel only, under the facts of this case, constituted service upon Mr. Hohlbein. Furthermore, we believe the rationale stated in Babcock regarding service of, and access to, a copy of the record of trial should, with equal logic, apply to service of, and access to, the review of the staff judge advocate. Mr. Hohlbein had access to a copy — that served on trial defense counsel. That is all the law should require under the circumstances present in this case. If Mr. Hohlbein desired his own copy, it was incumbent upon him to request it. By his actions in requesting an extension of time to respond to the review, he conveyed the impression that he already was in possession of a copy of the review. How else could he have responded to it by challenge or comment?
Mr. Hohlbein, by virtue of the service of the staff judge advocate review, his request for an extension of time to enter a response thereto, and his receipt of notice both via the trial defense counsel, the avenue of communication he had authorized by his actions, and directly, by letter from the convening authority dated 7 July 1983, was in fact on notice of the impending convening authority action. The convening authority was not required, beyond serving the staff judge advocate review upon counsel, which carries with it the explicit notice that the action can be expected to be taken in 5 days, to give any notice to the defense team that his action would be taken on a day certain or within a given timeframe.
The convening authority granted Mr. Hohlbein, at the latter’s request, an extension of time on 1 July to expire at close of business on 11 July. Mr. Hohlbein had both direct (by letter of 7 July) and constructive (oral grant to trial defense counsel on 1 July) notice of the expiration of this extension. Notwithstanding the limitation of 11 July specified by the convening authority, that authority withheld his action until 18 July in the event a response, or request for additional enlargement of time to respond, had been posted but not received. The convening authority extended to the civilian attorney a courtesy and benefit which the law did not require. It is *412 the most spurious of contentions then to suggest that the convening authority took his action “before we (the defense team) could have received such notice.” That, in spite of a termination of extension on 11 July, no communication from Mr. Hohlbein was ever received by the convening authority on this case until 16 August — a month after the convening authority acted — reveals the captious nature of this claim.
Pursuant to the provisions of Paragraph 48/c (1) and 77a, MCM, Mr. Hohlbein could have submitted the recommendation for clemency from on and after the date his services were obtained by appellant. He did not require service of the staff judge advocate’s review, and the forum provided by Goode, to perform this duty. They are duties independently provided for by statutory and decisional law. We consider the period from 17 June, the earliest date we can presume that Mr. Hohlbein was involved in the case, to 18 July to be more than sufficient time to draft and present to the convening authority the type of clemency recommendation ultimately forwarded on 16 August.
Mr. Hohlbein, at the time of its submission, never intended the petition of 16 August to be treated as a response filed under Goode. This is abundantly clear by his citation, within the petition, to Paragraph 11a, MCM, as the statutory authority for presenting the petition. We must conclude, on these facts, that his attempt to tie the tardiness of his filing of the petition, and the lack of power in the convening authority to consider it, to a violation of the Goode rule is the product of imaginative invention which had its genesis shortly pri- or to 8 December 1988.
Mr. Hohlbein has made numerous references to the Code, the Manual, and the decisions of military courts. We shall presume, by these assertions, that he had adequately familiarized himself with the provisions and cases cited, as well as with military law in general as it would have impact upon, and relevance to, his representation of appellant, and that he would not have accepted this case as counsel unless he felt competent to so act. Applying this presumption, we hold Mr. Hohlbein to have known that the convening authority could neither consider nor act upon a clemency petition after he had published his final action on the case. We further hold him, as the record makes self-evident, to have been familiar with the law regarding the filing of recommendations of clemency. On 18 July with the promulgation of his action, the convening authority was, as a matter of law, divested of any authority to consider or act upon the clemency petition. The staff judge advocate did what the law requires — he forwarded the petition, albeit to the wrong office, for attachment to the record of trial. Given this chronology, the first reviewing authority that could, and will, legally consider and act upon the petition is this Court.
The final issue raised by Mr. Hohlbein as an error is the challenge to this Court’s ruling which denied his motion to remand the record of trial to the convening authority. We shall not long linger on this claim. The three factors which were adopted from the clemency petition and argued as the basis for remand are matters affecting clemency or appropriateness of the sentence. In the absence of a claim that the sentence approved by the convening authority exceeded the statutory maximum, none of these factors constitutes a proper ground for remand. The other bases cited are matters which this Court would consider, when raised as an asserted error, in the normal course of our appellate review. Furthermore, as we have expressed above, they are void of merit. It was not the convening authority who erred in this case. There exists no requirement, in law or logic, to return a record for a new convening authority action merely because the defense team did not take timely advantage of rights properly accorded them. Thus, reconsideration of our denial of the motion to remand is denied.
We consider the substance of the factors raised in the clemency letter of 16 August to be matters affecting only the clemency power of the convening authority. As *413 such, the procedural rights enunciated in Goode are irrelevant and not applicable to adjudicating the claim that the convening authority deprived the defense team of the right to submit a clemency petition. Neither the service of the review, nor any other action of the Government, is a condition precedent to the right to submit such a petition. That right is governed by the Manual — not by Goode. Even had the mechanics of the rule of Goode not been complied with in this case, we would not require a new review as the matters raised by the clemency petition do not “correct or challenge any matter (deemed) erroneous, inadequate or misleading” in the review. If the defense intends to question the rulings of the military judge or expound on a procedural irregularity occurring during trial, Article 38(c) is to be utilized. If the desire is to request clemency, a recommendation in that vein, following the conditions, format and limitations set forth in Paragraphs 48/c (1), 77a, and 89a, MCM, is in order. If the challenge is to the staff judge advocate review, the Goode response is the appropriate vehicle. Just as one should not, purely as a matter of common sense, utilize the Goode response to request a deferment of the service to confinement, that forum should not be utilized to merely request clemency.
At first blush it might appear inconsistent with what we have stated concerning the distinctions between the rights under Goode and the right to petition for clemency to now determine whether or not the rules in Goode were violated in this case. Owing to the statutory duty of the staff judge advocate to make specific recommendations as to action to be taken relative to sentence, we, out of a degree of prudence, have considered the ground advanced in the clemency petition which addresses disparity of sentences to arguably be a matter which could be properly included within the right, under Goode, to challenge any matter on which the defense “otherwise wishes to comment.” We find that Mr. Hohlbein, aware of the time limitation specified in Goode, failed to enter a timely response and to offer any explanation why the 11 July deadline could not be met. Further, we, as did Mr. Hohlbein, view his actions and those of trial defense counsel as the actions of a defense team. On 18 July, the trial defense counsel indicated he had no comments to the review. We will hold the defense team to the representation, which they created, that this declination to comment was with the consent of Mr. Hohlbein. Under these circumstances, and in concert with the findings we have delineated above, we hold that the defense knowingly waived any right to file a Goode response in this case.
We have considered the matters addressed within the clemency petition and decline to grant any relief.
Accordingly, the findings and sentence as approved on review below are affirmed.
Senior Judge GREGORY and Judge MITCHELL concur.

. The record of trial contains two cover letters signed by the civilian counsel, dated 12 and 16 August 1983, purporting to transmit a petition for clemency, but only one such petition, dated 16 August 1983.

. Paragraph 77a, MCM:
After the sentence has been announced, the defense may submit in writing for attachment to the record any matter as to clemency which it desires to have considered by the military judge, the members of the court or the convening authority. The rules of evidence are not applicable to these matters, but they should not be cumulative of matters presented to the court before the sentence was announced.

. The clemency petition should have been forwarded directly to this Court for attachment to the record of trial, vice being transmitted to the appellate defense counsel. See Paragraphs 48k and 77a, MCM. Failure to observe this requirement that such petitions be "attached to the record” resulted in the continued circumlocutory trip of the petition from appellate defense counsel to the civilian counsel, accompanied by the advice to resubmit it to the supervisory authority for action. This Court was required to issue an ORDER on 19 April 1984 to the Government in order to obtain, for attachment to the record of trial and our consideration on review, the aforementioned petition.

. While the motion is styled as being submitted pursuant to Article 69, UCMJ, 10 U.S.C. § 869, and Rule 2b, Courts of Military Review Rules of Practice and Procedure, both of which deal with the review of court-martial cases not subject to direct review by this Court under Article 66(b), UCMJ, 10 U.S.C. § 866(b), we have treated it as if submitted under properly cited authority.

. We doubt that the civilian counsel is representing appellant on review without charge for services rendered. If this be the case, it is improper to use a military title or rank in the manner noted.

. We do not overlook Article 72(a), UCMJ, 10 U.S.C. § 872(a), which provides for counsel representation at a vacation proceeding.

. See Index and Legislative History, UCMJ, at 21 (HR) and 18 (SR).

. Ibid, at 1022 (HR).

. Black’s Law Dictionary, 240 (4th Ed.1951).

. Additional post-trial duties placed upon trial defense counsel by Paragraph 48k, MCM, are advising an accused of his appellate rights and on his right to make application for deferment of the service of confinement.

. See United States v. Engle, 1 MJ. 387, 388 n. 1 (C.M.A.1976).

. See United States v. Brown, 5 M J. 454, 455 n. 2 (C.M.A.1978) (Cook, J. dissenting), at 455.

. United States v. Titsworth, 13 MJ. 147 (C.M. A. 1982).

. United States v. Sawyer, 7 MJ. 195 (C.M.A. 1979); United States v. Morrison, 3 MJ. 408 (C.M.A.1977). There may, however, be additional time necessitated where service is by mail. United States v. Kincheloe, 14 MJ. 40 (C.M.A.1980).

. United States v. Narine, 14 MJ. 55 (C.M.A. 1982) (providing a right in trial defense counsel to be served with, and to comment upon, a supplemental review drafted by the staff judge advocate which raises new matter not contained within the initial review and, thus, not capable of being responded to in the initial defense response); United States v. Hill, 4 M J. 33 (C.M. A.1977) (establishing as an essential ingredient incident to the representation of an accused for purposes of Goode, the right of an accused to counsel representation at a post-trial interview).

. An additional post-trial responsibility of trial defense counsel created by decisional law was *410 announced in United States v. Anderson, 12 MJ. 195 (C.M.A.1982), providing for a hearing, with counsel involvement, to consider proposed corrections to the record of trial after authentication.

. This Court applied this view in United States v. Rushing, No. 84 0914 (NMCMR 24 July 1984), where, contrary to the request of appellate government counsel that we deny a motion to attach it to the record for our consideration, we accepted trial defense counsel’s letter, which raised an issue of disqualification of reviewing authorities, and was addressed to appellate defense counsel, as a brief submitted pursuant to Article 38(c), UCMJ, albeit the brief fell far short of meeting the standards expressed above.

. United States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).